## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:17-cr-0026** |
| | ) | |
| **RON DELANO KUNTZ, KEAON WILSON,** | ) | |
| **and SHAWN MCINTOSH,**[1] | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

**Molloy, District Judge.**

      **BEFORE THE COURT** is Defendant Shawn McIntosh's ("McIntosh") *Motion for New Trial for Brady/Giglio Violation* filed on July 12, 2018. (ECF No. 411.) Defendants Keaon Wilson ("Wilson") and Ron Delano Kuntz ("Kuntz") joined in the motion on July 14, 2018. (ECF Nos. 413, 414.) Defendants argue that the Government suppressed material evidence that may have been exculpatory. For the reasons stated below, the Court will deny the motion.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

      The facts pertinent to the disposition of this motion are as follows. Defendants Kuntz, Wilson, and McIntosh ("Defendants") were charged with Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. §§ 1951-52, and Brandishing a Firearm During a Federal Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A), related to a 2013 robbery of the Gems & Gold Corner Jewelry Store ("Gold Corner") on St. Thomas, U.S. Virgin Islands.

      On September 15, 2013, Wilson and McIntosh flew to St. Thomas from St. Croix with two co-conspirators. The four of them stayed at a local hotel that night and returned to St. Croix the following day, after the robbery. Another co-conspirator rented a Jeep Wrangler

---

[1] This case originally involved seven defendants: Jarmaine Ayala, Wahilli James, Ron Delano Kuntz, Shaquielle Correa, Devon Davis, Keaon Wilson, and Shawn McIntosh.  Kuntz, Wilson, and McIntosh proceeded to trial. The other defendants entered into plea agreements. An eighth individual, Robert Brown, was also involved in the robbery but was charged in a separate case. *See United States v. Brown*, Case No. 3:17-cr-0041. This Order pertains only to the three defendants named in the caption above.

*United States v. Kuntz et al.*
Case No. 3:17-cr-0026
Memorandum Opinion
Page 2 of 3

the day before the robbery, which Kuntz and other co-conspirators then used to drive to a local store to purchase hats and sunglasses, allegedly as disguises for the robbery.

On the morning of the robbery, September 16, 2013, four men entered the Gold Corner. Two of the men brandished guns and at least one used a hammer to break the glass display containing the jewelry. The store owner, Kishore Kanusing ("Kanusing"), who was behind the counter when the robbers entered, was told at gunpoint to get on the floor. He did as he was told and then heard glass shattering. The robbers grabbed the jewelry from the front case and ran out of the store. The entire robbery was recorded on the Gold Corner's security camera system. A few minutes later, Kanusing looked up, saw that the men had left, then got up and pushed the panic button, after which law enforcement officers arrived on the scene.[2] Two witnesses saw the robbers exit the Gold Corner and use the same Jeep Wrangler as a getaway vehicle, one of which took a picture showing the license plate number. Virgin Islands police officers later found the abandoned Jeep with evidence of the Gold Corner robbery inside the vehicle.

Prior to trial, Kanusing prepared a handwritten ledger ("ledger") detailing the items that were stolen from the front case during the robbery. Kanusing claimed that approximately $161,350.00 in jewelry was stolen during the robbery. That ledger was provided to Kanusing's insurance company, which paid Kanusing $130,322.12 for the claim.[3] The same ledger was submitted to Defendants during pre-trial discovery but was not offered into evidence by the United States ("Government") during trial. Kanusing further testified that even though he used invoices or purchase orders to create the ledger of stolen merchandise, he did not provide the invoices or purchase orders to the authorities.[4] (ECF No. 347, at 84.)

---

[2] The two surveillance cameras in the store were in working order the morning of the robbery. Kanusing reviewed the camera footage with Virgin Islands Police Department ("VIPD") officers later the same day.

[3] The insurance company deducted $31,027.88 from Kanusing's claim as part of the deductible.

[4] Q:     You said that you made an inventory and I'm asking that inventory that you did, was it done from the top of your head or do you have any invoices or any purchase orders of those items.

A:     Yes.

Q:     Did you at some point give any agent of the VIPD those invoices or those purchase[ ] order[s]?

A:     No.

Q:     No? So, the only evidence that you gave regarding the value of that property is the inventory you made yourself, correct?

During the jury trial held from January 22-24, 2018, Kanusing testified about the robbery. As part of his statement, Kanusing testified that items sold in his store were purchased from Italy and the mainland, demonstrating that they traveled in interstate commerce—a necessary element of Hobbs Act Robbery. During his testimony, Kanusing stated that "the amount of jewelry that was stolen" was worth "a little over a hundred thousand [dollars]." *Id.* at 81-82. The jury convicted the Defendants on all counts on January 24, 2018.

After the trial, and in preparation for the sentencing hearing, the Government sought documentation from Kanusing to verify Gold Corner's financial loss for restitution purposes. To substantiate the loss, in late April or early May of 2018, Kanusing submitted receipts to the Government for inventory the Gold Corner had purchased ("receipts"). (ECF No. 411-1.) Kanusing also provided an affidavit in which he stated he "[did] not wish to testify regarding restitution in this matter." (ECF No. 411-3.) On May 21, 2018, the Government provided Defendants with the Restitution Report ("Report"), which included the receipts and affidavit, showing a total loss of $161,350. (ECF No. 411.) During the first sentencing hearing, held on May 31, 2018, the Defendants raised objections over both the amount claimed and the date at which they received the Report. In response, the Government stated that "[i]t was extremely difficult to obtain information . . . from the victim who was reluctant to be involved in the matter again . . . ." Tr. First Sentencing Hr'g 28:4-11 (May 29, 2018), ECF No. 460. A discussion followed, in which the Government disclosed that it did not know when it received the documentation from Kanusing, but that it had provided the same Report and documentation to another defendant on May 7, 2018, in preparation for a sentencing hearing to be held May 10, 2018.

On July 12, 2018, Defendant McIntosh filed a motion for new trial for *Brady/Giglio* violations. (ECF No. 411.) Defendants Wilson and Kuntz joined McIntosh's motion on July 14, 2018. In the motion, Defendants argue that the Government withheld the receipts from the defense, in violation of *Brady* and *Giglio*, preventing Defendants from testing a line of

---

A:      Yes.
Transcript, Jury Trial, January 22, 2018, at 84:7-19, ECF No. 347.

impeachment, and thereby depriving Defendants of a fair trial. Defendants therefore assert that the Court must vacate the verdict and grant a new trial pursuant to Rule 33.

On July 18, 2018, the United States filed an opposition to Defendants' motion for new trial, arguing that *Brady* and *Giglio* are not applicable because the receipts were not in the possession of the prosecution during the trial. The Government argues that because the receipts were in the possession of the victim of the crime, who is not part of the prosecution team, there was no *Brady* or *Giglio* violation.

## II.  LEGAL STANDARD

The Defendants filed the motion for new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Rule 33 provides, in relevant part, that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). *See United States v. Davis*, 397 F.3d 173, 181 (3d Cir. 2005) (affirming that a district court may order a new trial "'only if it believes that . . . an innocent person has been convicted.'" ) (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)); *United States v. Ortiz*, 182 F. Supp. 2d 443, 446 (E.D. Pa. 2000) ("Whether to grant a Rule 33 motion lies within the district court's sound discretion.") (citation and quotation marks omitted); Therefore, it is the defendant's burden to establish that a new trial ought to be granted. *United States v. Saldana*, No. 2009-32, 2010 U.S. Dist. LEXIS 79399, at *8 (D.V.I. Aug. 4, 2010), aff'd, 473 Fed. Appx. 118 (3d Cir. 2012) ("[T]he burden is on [the defendant] to show that his trial resulted in a miscarriage of justice.").

Motions for a new trial under Rule 33 "are not favored and should be granted sparingly and only in exceptional cases.' *United States v. Quinones-Davila*, No. 2016-0009, 2019 U.S. Dist. LEXIS 15918, at *7 (D.V.I. Jan. 29, 2019) (internal quotation marks omitted).

## III.  DISCUSSION

In the present case, Defendants argue that they are entitled to a new trial pursuant to Rule 33 because the receipts are newly discovered evidence, withheld by the Government, that were first disclosed to Defendants prior to the initial sentencing, thus depriving Defendants of a fair trial. Defendants further argue that this evidence constitutes

"*Brady/Giglio* material that was either intentionally or inadvertently withheld from the defense at trial." Def.'s Mot. at 2, ECF No. 411.

Due Process is violated when the prosecution suppresses or withholds evidence that is both favorable and material to the defense. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  The failure of the prosecution to disclose either exculpatory or impeachment evidence, "coupled with a duty to disclose," constitutes a *Brady* violation meriting a new trial. *United States v. Risha*, 445 F.3d 298, 299 (3d Cir. 2006) (citing *Giglio*, 405 U.S. 150 (1972)). In order to demonstrate that the prosecution committed a *Brady* violation, the defense must show that: (1) evidence was suppressed by the prosecution; (2) the evidence was favorable to the defense; and (3) the evidence was material to guilt or punishment. *Id.* at 303.

To demonstrate the prosecution withheld evidence, the first prong of the *Brady* test, the defense must first prove the entity that controlled the evidence was a member of the prosecution team. *Risha*, 445 F.3d at 302 (defining prosecution teams as agents "acting on behalf of the . . . government" to prosecute the case); *see also Mendoza v. United States*, No. 06-167, 2013 U.S. Dist. LEXIS 109977, at *29 (W.D. Pa.  Aug. 6, 2013) (defining "prosecution team" under *Brady* as including "both investigative and prosecutorial personnel.").

When evidence is not within the immediate control of the prosecution, courts have looked to "constructive possession" to determine the government's obligation for disclosure. *See Calley v. Callaway*, 519 F.2d 184, 223 (5th Cir. 1975) (holding that prosecutors are obligated to produce certain evidence that is "actually or constructively" in their possession.) When addressing the issue of constructive possession and the prosecution's obligation to disclose evidence known to other agencies in the government, this Court must consider the following three factors:

1) Whether the party with knowledge of the information is acting on the [prosecution's] "behalf" or is under its "control";
2) The extent to which state and federal governments are part of a "team," are participating in a "joint investigation" or are sharing resources; and
3) Whether the entity charged with constructive possession has "ready access" to the evidence."

*Risha*, 445 F.3d at 304.

Here, Defendants' argument that the Government "withheld" the receipts in violation of *Brady* and *Giglio* implicitly alleges that the prosecution was able and obligated to disclose the receipts. However, Defendants provide no evidence that the Government was in possession—constructive or otherwise—of the receipts prior to trial. Looking to the first "*Risha* factor," Kanusing, who possessed the receipts, was neither acting on behalf of the prosecutor nor was in the prosecutor's control. Even though the Government cannot nail down the exact date it became in possession of the receipts, the facts show the Government did not have possession before or during the trial. Opp'n at 1-2, ECF No. 418.

In fact, Kanusing testified during the trial on January 22, 2018, that he made an inventory of the jewelry that was stolen on the day of the robbery. Trial Tr. at 81:19-20, 84:6-12 (Jan. 22, 2018), ECF No. 347. Kanusing further testified he created that inventory from invoices and purchase orders of those items. *Id.* at 84:6-12. However, when asked whether he ever gave any agent of the Virgin Islands Police Department the invoices or purchase orders, Kanusing responded, "No." *Id.* at 84:13-15. Finally, Kanusing responded, "yes" when asked on cross-examination: "So, the only evidence that you gave regarding the value of that property is the inventory you made yourself, correct?" *Id.* at 84:16-19. Kanusing's testimony on this issue was never controverted.

The second "*Risha*" factor asks the extent to which the party in possession of the evidence worked as part of the prosecution team with the government, participated in a joint investigation, or shared resources with the prosecution. Here, Kanusing—the victim—was in possession of the receipts*.* There is neither evidence that the Government shared resources with Kanusing nor that he was a member of the prosecution's investigative team. To the contrary, the Government stated that Kanusing was reluctant to provide information and was *un*cooperative. Tr. Sentencing Hr'g (May 31, 2018) at 28:4-9, ECF No. 460 ("It was extremely difficult to obtain information [ ] from the victim who was very reluctant to be involved in the matter again . . . .").

Under the third *Risha* factor, the Government did not have "ready access" to the receipts because they were in the possession of a third party outside of the government.

Therefore, pursuant to *Risha*, the "prosecution team" did not actively or constructively possess the receipts and was under no obligation to disclose them under *Brady* and its progeny.

Defendants have not met their burden of proving that the prosecution possessed or withheld the evidence in violation of *Brady* or *Giglio*. As such, the court finds it is unnecessary to address whether the receipts would be favorable to the defense and whether their disclosure would have resulted in a different outcome.

## IV.  CONCLUSION

For the reasons stated above, the Court will deny the Defendants' motion requesting a new trial. An appropriate Order follows.

**Dated:** November 5, 2020                    */s/ Robert A. Molloy*
                                              **ROBERT A. MOLLOY**
                                              **District Judge**